**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ERNESTINE WELCH,**

|  |  |
|---|---|
| **Plaintiff,** | **1:13-cv-1079** |
|  | **(GLS/CFH)** |

**v.**

**COLUMBIA MEMORIAL**
**PHYSICIAN HOSPITAL**
**ORGANIZATION, INC.,**

**Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Cooper, Erving Law Firm | BRIAN W. MATULA, ESQ. |
| 39 North Pearl Street, 4th Floor | |
| Albany, NY 12207 | |
| | |
| **FOR THE DEFENDANT:** | |
| Lombardi, Walsh Law Firm | PAUL E. DAVENPORT, ESQ. |
| 187 Wolf Road, Suite 211 | RICHARD P. WALSH, JR., ESQ. |
| Albany, NY 12205 | |

**Gary L. Sharpe**
**District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Ernestine Welch commenced this action against defendant

Columbia Memorial Physician Hospital Organization, Inc. alleging

violations of the Americans with Disabilities Act[1] (ADA) and the Family and Medical Leave Act[2] (FMLA). (*See generally* Compl., Dkt. No. 1.) Pending before this court is defendant's motion for summary judgment. (Dkt. No. 12.) For the reasons that follow, the motion is granted.

## II. Background

### A. Facts[3]

Welch worked as a full-time phlebotomist at Columbia Memorial from 2001 to September 2011. (Def.'s Statement of Material Facts (SMF) ¶¶ 1, 40, Dkt. No. 12, Attach. 16.) Starting in 2010, she also worked as a per diem phlebotomist at Bio-Reference Laboratory, which was affiliated with Coxsackie Correctional Facility, for two and one-half hours two mornings per week. (*Id.* ¶ 11; Dkt. No. 12, Attach. 7 at 23.)

On December 12, 2010, Welch injured her neck and shoulder in a car accident. (Def.'s SMF ¶ 9.) Columbia Memorial granted Welch's requested FMLA leave as a result of that accident from December 16 through December 22, 2010. (*Id.* ¶ 10; Dkt. No. 12, Attach. 7 at 24.)

---

[1] *See* 42 U.S.C. §§ 12101-12213.

[2] *See* 29 U.S.C. §§ 2601-2654.

[3] Unless otherwise noted, the facts are undisputed.

2

Although the record is not clear, it appears Welch then returned to work full-time at Columbia Memorial. (Dkt. No. 12, Attach. 7 at 26-28.) Six months later, in May 2011, Welch again requested FMLA leave for her injuries from the car accident. (*Id.* at 37.) Welch sent medical notes from Terry Meltz, her nurse practitioner, to the human resource department at Columbia Memorial indicating that Welch required full-time leave for two weeks. (Def.'s SMF ¶ 14; Dkt. No. 12, Attach. 1 at 1.)

According to Columbia Memorial, it was skeptical of Welch's belated request and sent her to an independent medical examination (IME) to verify her injuries. (Def.'s SMF ¶ 15.) The IME doctor opined that Welch was "[a]ble to work in a lab type situation in which there is limited physical activity" and prescribed certain physical limitations. (Dkt. No. 12, Attach. 1 at 8-9.) Columbia Memorial obtained a second IME because the results of the first IME conflicted with Meltz's medical opinion. (Dkt. No. 13, Attach. 9 at 16; Def.'s SMF ¶ 17.) Dr. John Ioia conducted the second IME and opined that Welch could work an eight hour day approximately four to five days per week with some limitations. (Dkt. No. 12, Attach. 1 at 14.) In Welch's return to work statement, Dr. Ioia indicated that she could stand, walk, or sit for four to six hours per day and carry a maximum of fifteen

3

pounds.  (Def.'s SMF ¶ 18; Dkt. No. 13, Attach. 4 at 2.)

After Columbia Memorial received the IME results, Kelly Sweeney, the Director of Human Resources, informed Welch that she must return to work full-time on June 27, 2011, and the hospital could accommodate the limitations prescribed by Dr. Ioia.  (Dkt. No. 12, Attach. 1 at 16.)  Welch returned and signed a temporary modified work assignment sheet that memorialized Columbia Memorial's accommodations.  (*Id.* at 18; Def.'s SMF ¶ 19.)

Robin Pascuzzi, Welch's direct supervisor, arranged the schedules for Columbia Memorial's phlebotomists.  (Def.'s SMF ¶ 3.)  Dawn Perlin, the laboratory director and Pascuzzi's supervisor, approved those schedules.  (*Id.*; Dkt. No. 12, Attach. 5 at 11.)  Before Welch's May 2011 leave, she had a fixed schedule where she worked every other weekend in the morning and on the weekdays except for Tuesdays.  (Dkt. No. 12, Attach. 5 at 25-26.)  Pascuzzi knew that Welch also worked at Bio-Reference Laboratory on Thursday mornings and permitted Welch to work Thursday evenings to accommodate her schedule.  (*Id.* at 27.)  Pascuzzi also knew that Welch attended school.  (*Id.* at 26.)  Days after Welch returned from leave in June 2011, Pascuzzi changed her schedule by

4

taking her off night shifts.  (*Id.* at 28, 45; Dkt. No.12, Attach. 7 at 48-51.)

Pascuzzi explained that she discussed changing Welch's schedule with

Perlin, and they decided to do so to assist Welch with her blood draws

because supervisors were not scheduled to work nights.  (Dkt. No. 12,

Attach. 5 at 46.)  Additionally, Perlin and Pascuzzi testified that Columbia

Memorial hired another full-time phlebotomist to work weekday evenings to

replace a full-time phlebotomist who left and to fill gaps in the schedule.

(*Id.* at 29-31; Dkt. No. 12, Attach. 6 at 23.)  During this period, Welch

testified that Perlin made negative comments to her including, "Oh, you

decided to come to work today," and her colleagues informed her about

negative comments Perlin made to them about her.  (Dkt. No. 12, Attach. 7

at 114, 128.)

Three days after Welch returned from FMLA leave, she presented a

note from Meltz requesting a reduced work schedule of four hours per day

for two weeks.  (Def.'s SMF ¶ 22; Dkt. No. 12, Attach. 1 at 20.)  Welch

submitted a medical certification form from Meltz that noted that Welch had

"[o]ngoing neck and shoulder pain" and that her job "which entail[ed]

bending over patients aggravate[d] [her] symptoms."  (Dkt. No. 13, Attach.

5 at 4.)  Perlin and Sweeney denied Welch's request.  (*Id.* at 2)  Perlin

stated that Welch did not meet the FMLA requirements because of the findings from the other IMEs.  (*Id.*)  Additionally, according to Columbia Memorial, it could not accommodate Welch's part-time request because the laboratory shifts were eight hours long, and it could not cover the remaining four hours of the shift.  (Def.'s SMF ¶ 38.)

A week later, Welch again requested FMLA leave.  (Dkt. No. 13, Attach. 7.)  Meltz recommended that Welch take full-time leave because Columbia Memorial could not accommodate a part-time schedule.  (*Id.* at 4; Dkt. No. 12, Attach. 4 at 65-66.)  Meltz opined that Welch could not bend her head or neck; nor could she lift over ten pounds.  (Dkt. No. 13, Attach. 7 at 3.)  Meltz estimated that Welch would be absent for approximately two to four weeks until she was cleared by an orthopedic physician.  (*Id.* at 4.)  Sweeney approved the leave.  (*Id.* at 2.)

Columbia Memorial calculated that Welch's twelve-week FMLA leave expired on August 25, 2011.  (Dkt. No. 14, Attach. 1 ¶ 3(c).)  Anticipating the expiration of her FMLA leave, Welch requested non-FMLA leave in which a health care provider concluded that Welch would need to work on a part-time, reduced leave schedule for an additional six months.  (Def.'s SMF ¶ 28; Dkt. No. 13, Attach. 11 at 4.)  On August 30, 2011, Welch

6

submitted a doctor's note that she would need to be out full-time through September 13th.  (Dkt. No. 12, Attach. 1 at 22.)  Sweeney acknowledged this request and notified Welch that she would be terminated if she did not return to work on September 13th.  (*Id.* at 24.)

In response, Welch informed Sweeney that her injury was ongoing, and she could only work four hours per day.  (*Id.* at 26.)  Welch renewed her request for part-time work and stated that "[i]f this cannot be accommodated, <u>I must submit my resignation effective immediately as I am physically unable to work a full day at this time.</u>"  (*Id.*)  In the same letter, Welch stated that "I'm rescinding my resignation, I am requesting a per-diem status until my further treatment for injury is completed."  (*Id.*)  Sweeney responded and informed Welch that her "resignation has been accepted."  (*Id.* at 28.)

## B.  <u>Procedural History</u>

Welch commenced this action on September 3, 2013.  (Compl.)  In her pleading, she alleges that Columbia Memorial denied her request for a reduced leave, part-time schedule because of her serious health condition, a benefit she alleges she was entitled to under the FMLA.  (*Id.* ¶¶ 51-56.)  Additionally, Welch alleges that, as a result of exercising rights under the

FMLA, she was retaliated against through adverse employment actions.

(*Id.* ¶ 57.)  Welch also alleges that Columbia Memorial violated the ADA by refusing to make reasonable accommodations for her disability, discriminating against her on the basis of her disability by not hiring her for a per diem position, and retaliating against her for engaging in protected activity.  (*Id.* ¶¶ 28-48.)  Consequently, Welch seeks compensatory and punitive damages, and attorney's fees.  (*Id.* at 8.)  Following the conclusion of discovery, (Dkt. No. 11), Columbia Memorial moved for summary judgment, (Dkt. No. 12).

### III.  **Standard of Review**

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here.  For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

### IV.  **Discussion**

A.  **ADA Claims**

Columbia Memorial first seeks summary judgment on the ADA claims, arguing that Welch abandoned those claims because she failed to

address their arguments in support of summary judgment in her opposition to that motion.  (Dkt. No. 14 at 1.)  Because, in response to Columbia Memorial's motion, Welch makes no argument in support of her ADA claims, the court deems those claims abandoned.  (Dkt. No. 13, Attach. 14); *see Szwalla v. Time Warner Cable, LLC*, No. 3:13-CV-713, 2015 WL 5708538, at *14 n.10 (N.D.N.Y. Sept. 29, 2015); *Taylor v. City of N.Y.*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) (holding "[f]ederal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way").  Thus, Columbia Memorial is entitled to summary judgment on Welch's ADA claims.

**B.**     <u>**FMLA Claims**</u>

    *1.*     *Interference*

Columbia Memorial contends that it is entitled to summary judgment because Welch received all of her FMLA leave and permitted Welch to return as a full-time phlebotomist after her leave expired.  (Dkt. No. 12, Attach. 15 at 19.)  Welch opposes and asserts Columbia Memorial interfered with her FMLA rights by denying her request for reduced, part-time leave.  (Dkt. No. 13, Attach. 14 at 13-15.)  Whether Columbia

9

Memorial interfered with Welch's FMLA rights Welch did not suffer any prejudice.  Thus, Columbia Memorial is entitled to summary judgment on this claim.

The FMLA entitles eligible employees to take up to twelve weeks per year of leave to care for a child, spouse, or parent, or for themselves "[b]ecause of a serious health condition[4] that makes the employee unable to perform the functions of the[ir] position."  29 U.S.C. § 2612(a)(1).  An employee who takes FMLA leave for themselves may do so intermittently or on a reduced schedule provided it is medically necessary.  *See id.* § 2612(b)(1).

"Section 2615(a)(1) of the FMLA states that '[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.'" *Potenza v. City of N.Y.*, 365 F.3d 165, 167 (2d Cir. 2004) (quoting 29 U.S.C. § 2615(a)(1)).  The Second Circuit has yet to determine the framework to evaluate claims based on an employer's alleged interference with an employee's FMLA rights.  *See id.* at 167-68; *see also Sista v. CDC Ixis N.*

---

[4] A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves . . . inpatient care in a hospital, hospice, or residential medical care facility; or . . . continuing treatment by a health care provider."  29 U.S.C. § 2611(11).

*Am., Inc.*, 445 F.3d 161, 175-76 (2d Cir. 2006). A majority of district courts in the Circuit have held that to prevail on an interference claim an employee must demonstrate that:

> (1) [s]he is an eligible employee under the FMLA; (2) that the employer is an employer as defined in the FMLA; (3) that she was entitled to leave under the FMLA; (4) that she gave notice to the employer of her intention to leave; and (5) that she was denied benefits to which she was entitled under the FMLA.

*Wanamaker v. Westport Bd. of Educ.*, 899 F. Supp. 2d 193, 205 (D. Conn. 2012) (collecting cases) (internal quotation marks, citations and alterations omitted); *see also Higgins v. NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 193 (S.D.N.Y. 2011). Additionally, and importantly here, the employee must have been prejudiced by the violation. *See Roberts v. Health Ass'n*, 308 F. App'x 568, 569 (2d Cir. 2009) (citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002)).

Welch contends Columbia Memorial interfered with her FMLA rights by denying her June 30, 2011 request for a reduced schedule of four hours per day for two weeks. (Dkt. No. 13, Attach. 14 at 14; Dkt. No. 12, Attach. 1 at 20.) Welch would be entitled to this benefit if she suffered from a "serious health condition" and reduced leave was "medically necessary."

29 U.S.C. § 2612(a)(1)(D), (b)(1).  This determination requires both a "medical need for leave" and "that such medical need can be best accommodated through [a] reduced leave schedule."  29 C.F.R. § 825.202(b).

Columbia Memorial initially denied Welch full-time FMLA leave after her second IME because Dr. Ioia opined that Welch could work full-time with some limitations.  (Dkt. No. 12, Attach. 1 at 12-16.)  Less than a month later, Columbia Memorial approved Welch's full-time FMLA leave. (Dkt. No. 13, Attach. 7 at 2.)  In between these two requests, Welch requested part-time leave, which, according to Columbia Memorial, was denied because of her IME results and because the hospital could not accommodate a part-time phlebotomist.  (Dkt. No. 13, Attach. 5 at 2; Def.'s SMF ¶ 38.)  Columbia Memorial's subsequent approval of Welch's full-time FMLA leave suggests that she did suffer from a qualifying serious medical condition at the time of her reduced leave request.  Additionally, it raises a question regarding whether reduced, part-time leave was medically necessary.

Assuming without deciding that Columbia Memorial interfered with Welch's FMLA rights, Welch has not demonstrated prejudice.  *See*

*Roberts*, 308 F. App'x at 569.  In *Roberts*, the court held that an employee who was terminated after only ten weeks of FMLA leave was not prejudiced by the violation because her doctor concluded she would be unable to perform the essential functions of her position after her FMLA leave expired.  *Id.* at 569-70.  The employer also provided the employee with twelve weeks of benefits, the full amount allotted under the FMLA.  *Id.* at 570.

Like *Roberts*, Welch could not perform the essential functions of her position after her FMLA leave expired.  *See Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 161 (2d Cir. 1999) (holding employer did not have FMLA obligation to restore employee's past position when he could not perform the essential functions of that job); *see also* 29 C.F.R. § 825.216(c).  It is undisputed that full-time phlebotomists must work an eight-hour shift.  (Def.'s SMF ¶ 5.)  Welch's health care provider concluded that she would not be able to work full-time for six months starting in August 2011.  (Dkt. No. 13, Attach. 11 at 4.)  Additionally, when called to return to work, Welch informed Sweeney that she could not physically work a full eight-hour day.  (Dkt. No. 12, Attach. 1 at 26.)  Furthermore, although it was not allotted as part-time leave, Welch received all twelve

weeks of her FMLA leave.  (Def.'s SMF ¶ 27; Dkt. No. 14, Attach. 1 ¶ 3.)

Thus, Welch was not prejudiced if there was a  violation.  *See Roberts*, 308

F. App'x at 569.

    *2.   Retaliation*

Columbia Memorial argues that it is entitled to summary judgment on

Welch's FMLA retaliation claim because her schedule change was not an

adverse employment action.  (Dkt. No. 14 at 11-12.)  Furthermore,

Columbia Memorial contends it changed Welch's schedule because it hired

a new full-time phlebotomist to work evenings and to accommodate

Welch's temporary modified work assignment.  (*Id.* at 12.)  Additionally,

Columbia Memorial asserts that comments by Perlin are insufficient to

show that its proffered legitimate reasons for the change in Welch's

schedule were pretext for retaliation primarily because Welch was afforded

FMLA leave when the comments were made.  (*Id.* at 14.)  Welch counters

and asserts that her schedule change was an adverse employment action

because it prevented her from attending school and her second job.  (Dkt.

No. 13, Attach. 14 at 20.)  Further, Welch argues that the temporal

proximity between her schedule change and her FMLA leave as well as

comments allegedly made by Perlin evince retaliatory intent.  (*Id.* at 21-22.)

14

Retaliation is a separate, distinct cause of action under the FMLA. *See* 29 U.S.C. § 2615(a)(2); *see also Potenza*, 365 F.3d at 168.  To establish a claim, an employee must allege: (1) she exercised rights under the FMLA; (2) she was qualified for the position; (3) she suffered adverse employment action; and (4) the adverse action occurred under circumstances giving rise to retaliatory intent.  *See Potenza*, 365 F.3d at 168.

Unlike FMLA interference claims, the Second Circuit has determined that the *McDonnell Douglas* burden shifting framework applies to FMLA retaliation claims.  *See id.*  Thus, after an employee states a prima facie claim, the burden of production shifts to the employer to state a legitimate, nonretaliatory reason for the adverse employment action.  *See Knox v. Town of Southeast*, 599 F. App'x 411, 414 (2d Cir. 2015); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Then, the burden shifts back to the employee to demonstrate that the employer's reason is pretext for retaliation.  *See Knox*, 599 F. App'x at 414; *McDonnell Douglas Corp.*, 411 U.S. at 804.

Here, Welch easily demonstrates the first two elements of her prima

facie claim because she took FMLA leave and worked for Columbia Memorial as a phlebotomist. Columbia Memorial relies on a defunct standard and contends that Welch's schedule change must alter the terms or conditions of her employment to satisfy the third element of an adverse employment action. (Dkt. No. 14 at 11-12.)[5] In accord with the appropriate legal standard, "a materially adverse action is any action by the employer that is likely to dissuade a reasonable worker in the plaintiff's position from exercising [her] legal rights." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 164 (2d Cir. 2011) (incorporating the Title VII standard to the anti-retaliation provision of the FMLA); *see Burlington N. & Santa Fe Ry. Co. v. White* (*White*), 548 U.S. 53, 68-69 (2006). Courts must evaluate the alleged adverse action objectively but in the context of the employee's particular circumstance. *See Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010); *see also Singh v. N.Y. State Dep't of Taxation & Fin.*, 911 F. Supp. 2d 223, 241 (W.D.N.Y. 2012).

 Welch asserts her schedule change upon returning to Columbia

---

[5] The cases cited by Columbia Memorial evaluate whether a schedule change is an adverse action under the former standard and, therefore, are inapposite. (Dkt. No. 14 at 11-13); *see DiBrino v. Dep't of Veteran's Affairs*, 118 F. App'x 533, 534 (2d Cir. 2004); *Bright v. Le Moyne Coll.*, 306 F. Supp. 2d 244, 253-54 (N.D.N.Y. 2004).

Memorial in June 2011 prevented her from working a second job at Bio-Reference Laboratory and from attending school.  (Dkt. No. 13, Attach. 14 at 20.)  Prior to June 2011, Welch's supervisors accommodated her for these outside activities.  (Dkt. No. 12, Attach. 5 at 27; Dkt. No. 12, Attach. 6 at 21-22.)  Ordinarily a schedule change will not be a sufficient materially adverse action, however, context and circumstances may direct otherwise.  *See White*, 548 U.S. at 69 (noting "[a] schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children"); *Singh*, 911 F. Supp. 2d at 241 (stating that a one-hour shift change which increased an employee's day care costs may be a sufficient adverse action).  Considering Welch relied on her schedule to attend school and work at Bio-Reference Laboratory, and her supervisors previously accommodated that schedule, it appears her schedule change is an adverse employment action, or at least is arguably so.

Finally, Welch can establish her schedule change occurred under circumstances giving rise to retaliatory intent.  Welch returned from FMLA leave days before her supervisors changed her schedule.  (Dkt. No.12, Attach. 7 at 48-51.)  This very close temporal proximity alone is sufficient to

support an inference of retaliation.  *See, e.g., Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 152 (2d Cir. 2012) (denying summary judgment where employee received a negative performance evaluation ten days after his return from FMLA leave); *Terry v. Cty. of Cayuga*, No. 5:11-CV-1296, 2013 WL 5464395, *5 (N.D.N.Y. Sept. 30, 2013) (noting that the employee was terminated on the day she returned from FMLA leave, and finding that "[s]uch close temporal proximity generally gives rise to an inference of retaliation").  Accordingly, Welch met her prima facie burden on her retaliation claim.

Columbia Memorial asserts it had legitimate, nonretaliatory reasons for modifying Welch's schedule.  Columbia Memorial argues it modified Welch's schedule because (1) the hospital hired a new full-time phlebotomist to work evenings and (2) Welch's new schedule accommodated her temporary modified work assignment.  (Dkt. No. 14 at 12-13.)  Pascuzzi and Perlin testified that they hired a new phlebotomist to work only weekday evenings to replace another who recently resigned and to fill in schedule gaps.  (Dkt. No. 12, Attach. 5 at 29-31; Dkt. No. 12, Attach. 6 at 23.)  Columbia Memorial also contends that it adjusted Welch's schedule to comply with her temporary modified work assignment.

Under the new schedule, a supervisor would always be available to assist Welch with her workload.  (Dkt. No. 12, Attach. 6 at 33; Dkt. No. 14 at 12-13.)  Perlin testified that supervisors were only scheduled to work during the day for budgetary reasons.  (Dkt. No. 12, Attach. 6 at 34.)  Accordingly, Columbia Memorial has demonstrated legitimate, nonretaliatory reasons for Welch's schedule change.  *See Bowman v. CSX Transp., Inc.*, 22 F. Supp. 3d 181, 192 (N.D.N.Y. 2014) (noting that "[t]he employer's burden is merely one of production, not persuasion" (internal quotation marks and citations omitted)).

In response, Welch fails to offer sufficient evidence of pretext.  Welch again cites the temporal proximity of her schedule change.  (Dkt. No. 13, Attach. 14 at 20.)  Additionally, Welch testified that Perlin made negative comments to her including, "Oh, you decided to come to work today." (Dkt. No. 12, Attach. 7 at 128.)  Welch also testified that her colleagues informed her of otherwise unspecified "negative remarks" Perlin made about her. (*Id.* at 114.)

Although temporal proximity satisfied Welch's prima facie burden, it alone is insufficient to overcome Columbia Memorial's legitimate, nonretaliatory reasons for her schedule change.  *See Lehtinen v. Town of*

*Greenport*, No. 1:12-cv-393, 2014 WL 3477037, at *12 (N.D.N.Y. July 11, 2014). The comment allegedly made by Perlin fails to bolster Welch's argument. "[S]tray remarks, even if made by a decisionmaker, do not constitute sufficient evidence to make out a case of employment discrimination." *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998); *see Terry*, 2013 WL 5464395, at *7 (discussing *Danzer* in a FMLA retaliation claim). Rather, there must be a nexus between Perlin's comments and Welch's schedule change. *See Adams v. Master Carvers of Jamestown, Ltd.*, 91 F. App'x 718, 722-23 (2d Cir. 2004) ("In order for the remarks to be deemed significant, the plaintiff must show their nexus to the adverse employment decision."). To the extent Perlin's comment shows evidence of retaliation, Welch fails to present any such nexus. Furthermore, the statements by Welch's colleagues, which lack any specificity, are inadmissible hearsay that cannot be considered on a summary judgment motion. *See Sarno*, 183 F.3d at 160 (rejecting, on a motion for summary judgment, statements that "w[ere] told" to the employee as inadmissible hearsay). Welch fails to submit an affidavit from her colleagues who had personal knowledge of such comments. *See id.* Because Welch fails to raise a triable issue of fact that Columbia

Memorial's proffered legitimate reasons were merely pretext for retaliation, summary judgment is appropriate.

## V. <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Columbia Memorial's motion for summary judgment (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED** that Welch's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

November 6, 2015
Albany, New York

Gary L. Sharpe
U.S. District Judge